UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                              )
NORTHWEST PIPELINE CORPORATION,  )
                                              )      No. C05-1605RSL
                    Plaintiff,                )
          v.                                  )
                                              )      ORDER GRANTING DEFENDANTS'
DAVID L. ROSS and DEBRA L. ROSS, *et al.*,  )      MOTION IN LIMINE REGARDING
                                              )      EXPERT WITNESSES
                                              )
                    Defendants.               )
_____)

## I.  INTRODUCTION

This matter comes before the Court on "Defendants' Motions In Limine Re Expert Witnesses" (Dkt. #335).  In this condemnation action, plaintiff Northwest Pipeline Corporation ("NWP" or plaintiff) amended an existing right-of-way contract and condemned a new easement for the installation of a natural gas pipeline under defendants Deborah and David Ross' property.  The issue remaining for trial, is the amount of just compensation owed to defendants. Defendants move in limine under Fed. Civ. P. 26 and 37 to exclude documents and three of plaintiff's expert witnesses and their report because this material was untimely disclosed.  For the reasons set forth below, the Court grants defendants' motion in limine.[1]

---

[1] Neither party requested oral argument under Local Civil Rule 7(b)(4).  Accordingly, the Court decides this matter on the memoranda, declarations, and exhibits submitted by the parties.

## II. DISCUSSION

**A.      Background**

On September 19, 2005, plaintiff filed this condemnation action under the Natural Gas Act, 15 U.S.C. § 717, against 186 separately enumerated defendants.  See Dkt. #1 (Complaint - Caption).  David and Debra Ross (hereinafter "defendants") are the only remaining defendants.  See Dkt. #331 (Stipulation and Agreed Order Moving Case Schedule Deadlines for Ross) ("[A]ll other defendants in this case have been dismissed and Ross is the last remaining defendant.").  On March 29, 2007, after considering the parties' stipulation, the Court established April 20, 2007 as the expert disclosure deadline and set trial for October 1, 2007.  See Dkt. #317 (Order Regarding Stipulations and Continuing Trial Date).

Defendants claim that their property yields quality gravel for mining, which they contend is an element of the highest and best use for purposes of determining just compensation.  See Dkt. #335 at 2.  To support this contention, on May 4, 2007 under Fed. R. Civ. P. 26(a)(2)(B), defendants provided plaintiff with expert disclosures for Mr. Ross and Thomas Berry.  See Dkt. #336 (Dunphy Decl.) at Ex. B.  Based on assumptions made by Mr. Ross, Mr. Barry opined on the total cubic yards of material subject to the taking.  Id. (Barry Report).  Relying on Mr. Barry's calculation, Mr. Ross then opined in his report that net value of the gravel material within the taking and regulated setbacks was $823,368.[2]  Id. (Ross Report) (stating "to get a precise quantity of cubic yards of material I have enlisted the expertise of Metron Planning and Surveying [Mr. Barry] to take survey information supplied by Williams Pipelines['] engineers and calculate the cubic yards in this taking.").

On August 31, 2007, the parties simultaneously exchanged expert disclosures including reports for their respective appraisal experts.  See Dkt. #336 at Ex. D (NWP's disclosure of Jeff

---

[2]  As of October 19, 2005, the highest written offer to Ross was $55,582.64.  See Dkt. #43 (Corrected Amended Order Granting Plaintiff's Motion for Preliminary Injunctive Relief) at 2 n.1.

Grose as appraisal expert); Ex. E (defendants' disclosure of Don Gustafson as appraisal expert).

On September 26, 2007, based again on a stipulation from the parties, the Court continued the trial date to April 7, 2008 because Mr. Ross had been hospitalized for an extended period of time due to an accident. See Dkt. #331. As part of this continuance, the Court established October 18, 2007 as the Local Civil Rule 39.1(c)(3) mediation deadline and ordered that discovery be completed by January 11, 2008. Id. at 2. In compliance with the Court's September 26, 2007 order, the parties engaged in formal mediation on October 18, 2007, but mediation did not result in settlement. See Dkt. #336 at ¶8.

On Friday, November 16, 2007, plaintiff wrote to defendants to inform them "that Mr. Andreas Kammereck and Mr. Don West of Golder Associates, Inc. have been retained as experts and that [plaintiff] will be sending the Supplemental Expert Disclosures shortly." See Dkt. #347 (Sanders Decl.) at Ex. E. Over two weeks later, on December 5, 2007, plaintiff identified three experts, "naming Andreas Kammereck, Don West, and Grant Bailey as additional experts in this matter." Id. at Ex. F. The disclosure for these three experts (the "Golder experts"), however, did not include an expert report. See Dkt. #336 at Ex. F (NWP's Supplemental Expert Disclosure Pleading) (stating "see upcoming report").

Enclosed with a letter dated Friday, December 21, 2007, plaintiff provided a copy of a seven-page document dated May 19, 2004 bearing a Golder Associates' title block labeled "Record of Borehole NFSR-3." See Dkt. #347 at Ex. G (letter enclosing document); Dkt. #336 at Ex. G (copy of Record of Borehole NFSR-3).

On the January 11, 2008 discovery deadline, plaintiff provided defendants with a copy of a 184-page expert report from Messrs. Kammereck, West and Grant (the "Golder report"). See Dkt. #336 at Ex. G; Dkt. #355 at ¶2. The report contains a 23-page narrative section and nine appendices totaling an additional 161 pages. See Dkt. #355 (Suppl. Dunphy Decl.) at ¶2. After the discovery cutoff, plaintiff continued producing documents. See Dkt #347 at Ex. J (January 17, 2007 letter from plaintiff producing documents and updating defendants on supplemental

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE REGARDING EXPERT WITNESSES           -3-

document production); id. at Ex. K (January 30, 2008 letter enclosing documents for

production).  On January 18, 2008, plaintiff supplemented the Golder report with replacement

pages because of typos. Dkt. #336 at Ex. G.  On January 30, 2008, plaintiff mailed defendants a

letter stating that "[w]e should also schedule the depositions for the geotechnical experts at

Golder and Associates, whose expert report was submitted to you on Friday, January 11, 2008."

Dkt. #347 at Ex. K.

    The parties' dispute related to these issues culminated in a letter from plaintiff's counsel

on February 12, 2008, stating:

> You indicate that it is your intention to bring a motion in limine to exclude the Golder bore log prepared for Northwest in 2004 because the document was intentionally withheld.  This is a serious charge for which you have failed to provide any support.  You have not identified any interrogatory or request for discovery to which that document was responsive.  Moreover, the discovery deadline had not yet passed at the time you received the document, and thus it was a timely disclosure.  I also remind you that both parties continued to exchange documents well after December 21, 2007.  In light of these facts, please explain to me the basis of your assertion that the document was intentionally withheld.

> Finally, you also indicate that it is your intention to bring a motion in limine to exclude the Golder expert report because the time for submitting expert reports has long since passed.  You were notified by telephone in late November and in writing on December 5, 2007, of our intention to engage the expert services of geologists at Golder & Associates.  You received that expert report on January 11, 2008, more than a month ago.  Trial in this matter is not schedule [sic] to begin for another two (2) months, on April 7, 2008.

> Northwest has not caused your client any prejudice as required by Ninth Circuit case law for the exclusion [sic] our expert report.  You cannot claim that you were surprised when you received our report.  Moreover, there was and continues to be sufficient time for you to take the deposition of our experts and we have repeatedly made them available to you.  It is your prerogative to bring a motion in limine.  However, your decision to delay taking the deposition of our experts until a ruling on such motion will be the true cause of any disadvantage or prejudice your client may suffer.

Dkt. #347 at Ex. L.  On March 5, 2008, in compliance with the Court's September 26, 2007

scheduling order, defendants' filed the motion in limine now before the Court for consideration.

See Dkt. #331; 335.  On March 11, 2008, due to a conflict with a pending criminal trial set for

April 7, 2008, the Court struck the trial date in this matter and set a pretrial conference for April

1    29, 2008 to reschedule the trial.  See Dkt. #344.

2    **B.    Analysis**

3    Defendant moves in limine under Fed. R. Civ. P. 26 and 37 to exclude:  (1) the "Record

4    of Borehole NFSR-3" (hereinafter "Bore Log") and a CAD document on a Golder title block

5    dated May 21, 2004 and labeled "Figure F-1" (hereinafter "Figure F-1"), which consists of a

6    notated aerial photo and cross-section from the "NWP/Capacity Replacement Project"; (2) the

7    Golder experts; and (3) the Golder report and any testimony referencing the report.  See Dkt.

8    #354 at 6.  "Although the Federal Rules of Evidence do not explicitly authorize in limine

9    rulings, the practice has developed pursuant to the district court's inherent authority to manage

10   the course of trials."  Luce v. United States, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid.

11   103); see Fed. R. Evid. 103(a) (empowering the court to make "a definitive ruling on the record

12   admitting or excluding evidence, either at or before trial"); Merrick v. Paul Revere Life Ins. Co.,

13   500 F.3d 1007, 1014-15 (9th Cir. 2007) (affirming, under abuse of discretion review, the district

14   court's ruling excluding evidence on plaintiff's motion in limine as a sanction for discovery

15   abuses).  Below, the Court separately addresses the three categories of material at issue.

16        **1.    Documents**

17             **a.    Bore Log**

18   In April of 2004, Golder drilled a 121.5' deep exploratory borehole on defendants'

19   property to determine the feasibility of using a horizontal directional drill ("HDD") to install the

20   pipeline under the North Fork Stillaguamish River.  See Dkt. #5, Ex. D at 1; Dkt. #346 at 3.  The

21   Bore Log contains, among other things, a description of the soil profile found in each layer of

22   the borehole.  See Dkt. #336 at Ex. G (Bore Log).  Defendants seek exclusion of the Bore Log at

23   trial because it was belatedly produced on December 21, 2007.  See Dkt. #354 ("NWP fails to

24   show any evidence justifying late disclosure of the bore log.").  Plaintiff makes three arguments

25   in response.  First, plaintiff argues that because it did not possess the Bore Log, plaintiff timely

26   produced it in December of 2007 upon discovery in Golder's files, and contends "it is far from

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE REGARDING EXPERT WITNESSES        -5-

clear that the document was responsive to the discovery requests made by Ross." Dkt. #346 at 4. Second, plaintiff contends that the Bore Log should not be excluded because it "is the only scientific piece of evidence from a geologist about the gravel resource." Dkt. #346 at 1.[3] Finally, plaintiff contends that exclusion of the Bore Log is not warranted because it was disclosed more than two weeks before the close of discovery and before defendants' experts were deposed in January of 2008. See Dkt. #346 at 3.

The Bore Log was ultimately produced by plaintiff, therefore the issue is whether the Bore Log should be excluded at trial because it was subject to disclosure under Rule 26(a) and defendants' discovery requests, but its production was late. There is no dispute that the Bore Log was disclosed late in this litigation. Although the Court does not know exactly when defendants' requests for production were served, the requests are dated September 20, 2006 and plaintiff's responses were received by defendants on October 23, 2006. See Dkt. #336 at Ex. H. Under Fed. R. Civ. P. 34(b)(2)(A), plaintiff's responses were due within 30 days after being served. Id. ("The party to whom the request is directed must respond in writing within 30 days after being served."). Plaintiff's Rule 26(a) initial disclosures were due on January 10, 2006. See Dkt. #118. Given that the Bore Log was not produced until December 21, 2007, however, the Court has no doubt that the Bore Log was not timely disclosed under Rules 34(b)(2)(A) and 26(a) and (e). Therefore, the next question is whether the Bore Log was subject to production under defendants' document requests and Rule 26.

**(i)      The Bore Log was subject to plaintiff's control**

First, plaintiff is wrong to assert that it did not have an obligation to produce the Bore Log because it was not in its possession. See Response at 3 ("Before mid-December, the Bore Log was in the possession of Golder."). Rule 34(a)(1)(A) allows a party to request "items in the responding party's possession, custody, or control," and defendants' first request for production

---

[3] The Court discusses this argument in section II.C, below.

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE REGARDING EXPERT WITNESSES          -6-

explicitly requires production of documents in plaintiff's "possession, custody, or control[.]"

See Dkt. #336 at Ex. H; A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D. Cal.

2006) ("Under Rule 34, a party must produce or permit inspection of documents responsive to a

request for production of documents when such documents are in the party's 'possession,

custody or control.'").  "Control is defined as the legal right to obtain documents upon demand."

United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452

(9th Cir. 1989).  Under Fed. R. Civ. P. 26(g), a party or attorney has an obligation to conduct a

"reasonable inquiry" for the basis of a discovery response, and courts have held that "based on

that inquiry, '[a] party responding to a Rule 34 production request . . . is under an affirmative

duty to seek that information reasonably available to [it] from [its] employees, agents, or others

subject to [its] control.'"  A. Farber & Partners, Inc., 234 F.R.D. at 189 (alterations in original)

(quoting Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (citation omitted).

Based on this authority, the Court finds that plaintiff had control over the Bore Log.[4]  On

September 20, 2005, plaintiff filed a motion for preliminary injunction to take possession of

certain easements and property interests in order to attempt the HDD.  See Dkt. #2.  In support

of this motion, plaintiff submitted an exhibit dated November 2004 and titled "Northwest

Pipeline Corporation Horizontal Directional Drill Contingency Plan Capacity Replacement

Project."  See Dkt. #5 (Long Decl.) at Ex. D.  This exhibit discloses that:

> Northwest retained Golder and Associates, Inc. to complete a geotechnical
> investigation of several waterbodies where preliminary assessments indicated the
> horizontal direction drill (HDD) method should be considered for installation of
> the pipeline.  The HDD method involves drilling a pilot hole under the waterbody
> and banks, then enlarging that hole through successive reamings until the hole is
> large enough to accommodate the pipe.  The report findings were published under
> the title *Capacity Replacement Project, HDD Geotechnical and Feasibility
> Assessment, Whatcom, Skagit, Snohomish, Pierce and Thurston Counties,*

---

[4]  The Court finds that defendants met their burden to show that plaintiff had control over the
Golder documents at issue.  See Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d at
1452 ("The party seeking production of documents . . . bears the burden of proving that the opposing
party has such control."); see, e.g., Dkt. #354 at 6; Dkt. #355 at ¶¶2-5.

*Washington* and presented to an interagency group on July 1, 2004 at the U.S. Army Corps of Engineers Office in Seattle, Washington.  The report is also available under the project docket CP05-32-000.

Id. at pg. I-1.  Significantly, the Bore Log is keyed to Figure F-1, a document completed for the NWP Capacity Replacement Project referenced above.  See Dkt. #355 at Ex. B.  Although plaintiff might be technically correct that it did not have "possession" of the Bore Log, the information above shows that plaintiff had "control" over the Bore Log given that it was completed by Golder at plaintiff's direction to evaluate the feasibility of the HDD.  What troubles the Court, is plaintiff's representation that the documents in Golder's files were not reviewed[5] until late 2007 <u>after</u> Golder was retained as an expert in this case, despite the fact that plaintiff disclosed as part of its September 2005 preliminary injunction motion that it hired Golder in 2004 to conduct a subsurface investigation of the property.  See Dkt. #346 at 3 ("It was not until Northwest retained Golder as experts in the condemnation matter that Golder reviewed its files and discovered that the Bore Log existed in mid-December.").  Plaintiff has not indicted that the Bore Log's disclosure was the product of a reasonable inquiry undertaken in response to defendants' discovery requests or as part of its Rule 26 disclosure obligations.  Rather, plaintiff's representations regarding the Bore Log show that its serendipitous disclosure was the result of plaintiff's belated decision to retain Golder as an expert in order to contest defendants' claim concerning the gravel resource on the property.  As a result, plaintiff has not shown that it conducted a "reasonable inquiry" into documents over which it had control, including Golder's files, subject to Rule 26's disclosure requirements and defendants' discovery requests.

    **(ii)    The Bore Log was subject to production under defendants' document requests and Rule 26**

In response, plaintiff defends the late disclosure of the Bore Log by arguing that "it is far

---

[5]  Notably, plaintiff does not state that Golder reviewed its files in order to comply with plaintiff's discovery obligations.  Plaintiff's response indicates that Golder reviewed its files to prepare its expert report.  See Dkt. #346 at 3.

1  from clear that the document was responsive to the discovery requests made by Ross." Dkt.

2  #346 at 4. Defendants contend that the Bore Log should have been produced by plaintiff as

3  responsive to requests for production one and thirteen. Defendants' first request for production

4  states: "Produce all documents, maps, surveys, diagrams[,] aerial photographs, and other

5  writings in your possession, custody, or control describing, referencing, or depicting the

6  easement created under the Right of Way Contract." Dkt. #336 at Ex. H. Plaintiff responded by

7  stating "Plaintiff has produced responsive documents herewith to the extent such documents are

8  still in Plaintiff's possession." Id. Defendants' request for production number thirteen states:

9  "Produce all plans, drawings, photographs, and documents of any kind relating to the work you

10  performed anywhere on Defendants' property since you took possession for construction

11  activities." Id. Plaintiff responded to this request as follows:

> **OBJECTION**. This request seeks documents that are protected as attorney work product. Without waiving the foregoing objection, Plaintiff responds as follows:

> See Response to Request for Production No. 1. In addition, Plaintiff has produced other non-objectionable responsive documents herewith to the extent that such documents are still in Plaintiff's possession.[6]

15  Id. These responses and plaintiff's failure to produce the Bore Log are problematic on several

---

[6] This is an evasive discovery response because it leaves defendants in a state of uncertainty about what is and is not being disclosed. For example, the response states that plaintiff is producing documents in its possession, but does not disclose whether documents in plaintiff's custody or control are being produced. Furthermore, in incorporating its response to request No. 1 by reference, plaintiff does not distinguish between the documents being produced under request number one versus request number thirteen. Finally, plaintiff's boilerplate objection based on the work product doctrine, without more, violates both Rule 26 and Ninth Circuit authority. See Burlington N. & Sante Fe R.R. Co. v. United States Dist. Court, 408 F.3d 1142, 1147-49 (9th Cir. 2005) ("Rule 26 clarifies that a proper assertion of privilege must be more specific than a generalized, boiler-plate objection" and "[w]e hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."); Fed. R. Civ. P. 26(b)(5) (stating that when a party withholds information based on the work product doctrine it must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."). The response to document request number thirteen provides no indication that plaintiff intended to provide a privilege log or other response to allow defendants to meaningfully contest the work product objection.

scores.  First, as discussed above, plaintiff failed to disclose whether it conducted a reasonable inquiry into documents subject to its control, not just in its possession.

Second, although plaintiff contends that the Bore Log was not responsive to request number one because "[t]he Bore Log does not describe, reference or depict the easement" and "did not contain any information about the easement or the methods for building and installing the pipeline," and the Bore Log was not responsive to request number thirteen because "Northwest's possession occurred over a year after the HDD feasibility assessment and after the Bore Log was generated," the Court finds that this type of narrow, evasive response violates the spirit of the discovery rules.  Dkt. #346 at 5; see Fed. R. Civ. P. 26 advisory committee's note (1983) ("[E]vasion or resistence to reasonable discovery requests pose significant problems. . . . The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. . . .  Thus, the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by    . . . unnecessary use of defensive weapons or evasive responses.").

Plaintiff's own experts have stated that borehole number three was drilled along the right of way.  See Dkt. #355, Ex. A (Golder report) at 6 (stating, under the heading "Previous HDD Investigations by Golder" that the investigations included the "drilling of three exploratory boreholes [including the subject of the Bore Log, NFSR-3] along the pipeline right-of-way"); ("Borehole NFSR-3, being located near the south boundary of the subject property, is directly applicable to the understanding of the subsurface geology of the property.") (emphasis added). To take the position that the Bore Log's soil survey does not "describe, reference, or depict" the easement is the type of sharp practice that this Court does not condone.  Furthermore, as plaintiff's experts state, NFSR-3 and its accompanying Bore Log, was done "in order to complete a geotechnical and feasibility assessment for a proposed HDD at the [North Fork Stillaguamish] river crossing."  Id.  Therefore, for plaintiff to argue in response to defendants' motion that the "Bore Log did not contain any information about . . . methods for building and

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE REGARDING EXPERT WITNESSES        -10-

installing the pipeline" misrepresents the facts.  See Dkt. #346 at 5 (emphasis added).  Golder

completed the Bore Log specifically to determine whether a certain method (HDD) for installing

the pipeline was possible.  As a result, the Bore Log was responsive to request for production

thirteen because it relates to the work undertaken after plaintiff took possession for construction

activities—namely, the HDD.

Finally, the Court also finds that plaintiff should have disclosed the existence of the

documents in Golder's files, like the Bore Log and Figure F-1 and any other documents

supporting plaintiff's claims or defenses, in its Rule 26(a) disclosures.  Under Rule 26(a)(1)(A),

"a party must, without awaiting a discovery request, provide to the other parties: . . . (ii) a

copy—or a description by category and location—of all documents, electronically stored

information, and tangible things that the disclosing party has in its possession, custody, or

control and may use to support its claims or defenses, unless the use would be solely for

impeachment."  Rule 26(e)(1) further provides that:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an
> interrogatory, request for production, or request for admission—must supplement
> or correct its disclosure or response:  (A) in a timely manner if the party learns that
> in some material respect the disclosure or response is incomplete or incorrect, and
> if the additional or corrective information has not otherwise been made known to
> the other parties during the discovery process or in writing[.]

Based on defendants' initial disclosures, plaintiff was on notice at least as early as

January 10, 2006 that the property's potential gravel resource would be an issue in valuation.

See Dkt. #150 at 2; 4 (stating that Mr. Ross has knowledge of the "extent and value of the gravel

resource on the Property" and documents including "[p]rice information regarding market value

of gravel" would be used by defendants to support their claims or defenses).  And, in September

of 2005, to support its preliminary injunction motion, plaintiff attached the exhibit indicating the

fact that Golder completed a geotechnical study of easement area.  See Dkt. #5, Ex. D.

Accordingly, even if plaintiff ultimately supplemented its disclosures by producing the Bore

Log, the Court cannot find that this disclosure in December of 2007, two weeks before the

discovery cutoff was timely under Rule 26(e).  As discussed below, the late disclosure Figure F-

1 as part of Golder's January 11, 2008 report is even more egregious.

For all these reasons, the Court finds that plaintiff failed to timely produce the Bore Log in response to defendants' requests for production, and failed to timely disclose the existence of the Golder documents as part of its obligation under Rule 26(a) and (e).  The only remaining issue is the appropriate remedy for this discovery violation, which the Court discusses below in section II.C.

      **b.**      **Figure F-1**

Defendant also moves in limine to exclude Figure F-1.  Figure F-1 is notable because it: (1) superimposes an aerial photograph with the location of the HDD and borehole number three's (NRSR-3 and the subject of the Bore Log) location on the property; (2) provides a cross-section of the subsurface conditions on the HDD path, which includes the property; and (3) is attached as an exhibit and referenced in the narrative portion the Golder report.  See Dkt. #355, Ex. A at 6 (referencing Figure F-1 in Appendix C of the report).  In its response, plaintiff does not mention Figure F-1 or oppose its exclusion as substantive evidence at trial despite the fact that defendants specifically objected to the document in their motion.  See Dkt. #335 at 11.[7] What is remarkable in light of the aforementioned discovery violations, is plaintiff's failure to explain why Figure F-1 was not produced in response to defendants' discovery requests.  Figure F-1 was not disclosed in the course of plaintiff's Rule 34 document production.  Rather, Figure F-1 was disclosed on last day of discovery as an exhibit to the Golder report.  While plaintiff disputes its obligation to produce the Bore Log in response to defendants' discovery requests, there is no doubt that Figure F-1 was responsive to defendants' first request for production as an aerial photograph in plaintiff's custody, or control, describing, referencing, or depicting the easement created under the Right of Way Contract.   See Dkt. #336 at Ex. H.  In section II.C below, the Court discusses the remedy for plaintiff's failure to timely disclose this document in

---

[7] Plaintiff, however, opposes exclusion of the Golder report, which includes Figure F-1 as an exhibit.

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE REGARDING EXPERT WITNESSES     -12-

violation of its discovery obligations.

**2.      Golder expert witnesses**

Defendants move in limine to exclude the Golder experts because they were not timely disclosed.  Expert disclosures were due on April 20, 2007.  See Dkt. #317 (Order Regarding Stipulations and Continuing Trial Date); Fed. R. Civ. P. 26(a)(2)(C) ("A party must make these [expert] disclosures at the times and in the sequence that the court orders.").  The three Golder experts were not disclosed until December 5, 2007.  See Dkt. #347 at Ex. F.  In its response, plaintiff does not dispute that this disclosure was untimely, but rather contends that it was harmless.  Accordingly, the Court considers the assertion of harmlessness in its discussion of the remedy for plaintiff's late disclosure of the Golder experts.

**3.      Golder report**

Finally, defendants move to "exclude any reference to the Golder report and the documents composed thereof at trial."  Dkt. #354 at 6.  Expert reports were on April 20, 2007.  See Dkt. #317.  The Golder report was not disclosed until the close of discovery on January 11, 2008.  In its response, plaintiff does not dispute the disclosure of the Golder report was late, but rather contends that it was harmless.  Accordingly, the Court considers the assertion of harmlessness in its discussion of the remedy for plaintiff's untimely disclosure of the Golder report.

**C.      Remedy for discovery violations**

As the Court found above, plaintiff failed to timely disclose the Bore Log, Figure F-1, the Golder expert witnesses and their report.  The remaining issue is the appropriate remedy for these violations.  Defendants argue for exclusion of this material at trial.  In contrast, plaintiff opposes an exclusionary remedy and instead asserts that the appropriate course is to give defendants the opportunity to depose the Golder experts.  See Dkt. #346 at 11 ("Ross has had and continues to have a substantial amount of time to prepare for those depositions and its cross-examination of the Golder experts at trial.").

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE REGARDING EXPERT WITNESSES          -13-

When a party fails to disclose or supplement its discovery responses in accordance with Rule 26(a) and (e), Rule 37(c) provides the remedy:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), <u>the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless</u>. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:  (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[8]

<u>Id.</u> at Rule 37(c)(1) (emphasis added).  The Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)."  <u>Yeti by Molly Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001).  Rule 37(c)(1)'s exclusionary sanction has been characterized by the Ninth Circuit and the advisory committee notes as "automatic" and "self-excuting."  <u>Id.</u> ("The Advisory Committee Notes describe it [Rule 37(c)(1)] as a 'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material.'") (alteration in original).  However, "[t]wo express exceptions ameliorate the harshness of Rule 37(c)(1):  The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless."  <u>Id.</u>

## 1.    Golder experts and report

In this case, plaintiff does not argue and the Court does not find that plaintiff was substantially justified in the belated disclosure of the Golder experts and report.  Instead, the question is whether the late disclosure was harmless as plaintiff asserts in its response.  Plaintiff correctly acknowledges that it has the burden to prove harmlessness.  <u>See</u> Dkt. #346 at 6;[9] <u>Yeti by Molly Ltd.</u>, 259 at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing

---

[8]  In their motion, defendants did not seek recovery of attorney's fees.

[9]  Although plaintiff references that it has the burden to show harmlessness, it nevertheless tries to shift its burden to defendants by contending they have failed to show that they have been harmed by plaintiff's conduct.  <u>See, e.g.</u>, Dkt. #346 at 2 ("Ross has failed to articulate harm with respect to the Golder Report."); 11 ("Ross has not demonstrated the necessary prejudice to exclude such reports.").

sanctions to prove harmlessness.").  Plaintiff's central argument in response is that its late

disclosures are harmless because they can be remedied by continuing discovery and allowing

defendants to depose the Golder experts about their testimony and the contents of the Golder

report.  See Dkt. #346 at 7 (arguing that "deposing these Golder experts can alleviate any

prejudice and harm and that excluding testimony is a particularly harsh, disfavored sanction").

        Courts, however, have rejected this argument because although a discovery continuance

might cure untimely disclosures, it would also render Rule 37(c)(1) toothless.  See Yeti by

Molly Ltd., 259 F.3d at 1106 ("Rule 37(c)(1) gives teeth to these requirements by forbidding the

use at trial of any information required to be disclosed by Rule 26(a) that is not properly

disclosed.").    For example, the court in Saudi v. Valmet-Appleton, Inc., 219 F.R.D. 128 (E.D.

Wis. 2003) explained:  "If [defendant's] inability to conduct necessary discovery or prepare to

respond to witnesses could be remedied by the Court simply shrugging its metaphorical

shoulders and pushing back deadlines several months, the harsh remedy provided by Rule 37(c)

might be avoided.  But, if the Court were to follow [plaintiff's] logic, the Court could never

impose a Rule 37(c) sanction."  Id. at 134.  Allowing defendants to depose the Golder experts,

by itself, also does not cure plaintiff's late disclosures.  The Golder experts and report

substantially expand plaintiff's scope of expert testimony.  Plaintiff admits that the Golder

experts are providing new substantive expert testimony, not simply rebuttal testimony:

>        Ross also appears to argue that the Golder witnesses were intended as rebuttal
>        witnesses.  As explained already, Golder is offering an opinion that existed from
>        early in this case, the depth and amount of the gravel on the property and
>        permitting issues.  Their opinion, however, is coming from a geological
>        perspective, which is a different perspective then [sic] offered by Mr. Ross.

Dkt. #346 at 8 n.3.  As a result, plaintiff argues, defendants should not be surprised by this

testimony.  Id. ("[A]llowing Northwest's experts to testify will cause no surprise to Ross.").

        Contrary to plaintiff's argument, however, the fact that the Golder experts are providing a

"new" line of testimony, as opposed to rebuttal testimony, is even more surprising and harmful

to defendants in this late stage of litigation.  Furthermore, it begs the question, if the subject of

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE REGARDING EXPERT WITNESSES        -15-

the Golder experts' testimony relates to an "issue that existed from early in this case," why did plaintiff wait until the last day of discovery and less than three months before trial to provide the Golder report?  The late disclosure is harmful and "surprising" because it means that at the end of the case in January of 2008, defendants unexpectedly have to scramble to meet "new" expert disclosures that should have been made in April of 2007.  As noted in defendants' reply, this type of extended litigation harms defendants by causing them to incur additional attorney's fees that plaintiff is in a much better position to absorb.  See Dkt. #354 ("Ross manifestly does not have the financial resources compared to NWP for paying attorney fees and expenses to conduct litigation in this manner.").

Plaintiff is also wrong to suggest that all defendants have to do to cure plaintiff's belated discovery is depose the Golder experts.  Had plaintiff timely disclosed the Golder experts and report, defendants would have had the right under Rule 26(a)(2)(C)(ii) to find and disclose a new expert to contradict or rebut the Golder experts' testimony.  By disclosing the Golder report on the last day of discovery, however, plaintiff has deprived defendants of this right.  As a result, although defendants could depose the Golder experts, absent a court sanctioned continuance, defendants will be exposed at trial without expert testimony of their own to oppose plaintiff's geological experts—plaintiff has conceded the Golder experts' testimony from a "geological perspective" is beyond the scope of Mr. Ross's expert testimony.

Allowing defendants to take post-discovery depositions and supplement their expert disclosures with an expert to rebut the Golder experts would also disrupt the Court's schedule.  As the Ninth Circuit has recently held, disruption of the district court's schedule is not harmless, a point plaintiff fails to acknowledge:

> If Wong had been permitted to disregard the deadline for identifying expert witnesses, the rest of the schedule laid out by the court months in advance, and understood by the parties, would have to have been altered as well.  Disruption to the schedule of the court and other parties in that manner is not harmless.  Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to.  The district court did not abuse its discretion here in refusing to permit Wong to supplement his disclosure with the additional expert

witnesses and in barring the testimony by and relying upon those witnesses.
Wong v. Regents of the Univ. of Cal., 410 F.3d 1052, 1062 (9th Cir. 2005).  It is the same in
this case.  As plaintiffs are well aware, the Court has routinely granted reasonable continuances
throughout this litigation on motion and by stipulation of the parties.  See, e.g., Dkt. ## 291,
296, 297, 308, 317.  With the Golder experts and report, however, plaintiff chose to proceed at
its peril with the late disclosure without first seeking leave of Court.  The Court finds that this is
a significant factor justifying exclusion of the Golder experts and report in this case.  See
Quevedo v. Trans-Pacific Shipping, Inc., 143 F.3d 1225, 1258 (9th Cir. 1998) (White, J.)
(affirming trial court's exclusion of expert report and testimony because "Plaintiff never sought
an extension of time from the district court.").

For all these reasons, the Court finds that plaintiff's late disclosure of the Golder experts
and report was not substantially justified or harmless and the Court grants defendants' motion to
exclude this material under Rule 37(c)(1).

**2.      Bore Log and Figure F-1**

For the same reasons articulated above, the Court finds that plaintiff has not shown that
the late disclosure of the Bore Log and Figure F-1 pursuant to Rule 26(a) and (e) was
substantially justified or harmless under Rule 37(c)(1).  As plaintiff's retention of the Golder
experts shows, expert testimony is needed to explain the Bore Log and related documents like
Figure F-1.  See Dkt. #346 at 8; Dkt. #355, Ex. A (Golder report) at 7-8 (explaining the results
of the Bore Log).  Plaintiff has itself argued that defendant's current experts are not geologists.
Id.  Plaintiff's failure to timely identify the Golder geological data in its Rule 26(a) and (e)
disclosures prejudiced defendants' ability to disclose an expert to challenge plaintiff's claims
regarding this data.  To do so now would disrupt the Court's schedule and defendants' trial
preparation.  See Wong, 410 F.3d at 1062.

The Court's rulings here are not in any respect a terminating sanction.[10]  Plaintiff still has the ability to contest the gravel resource at trial.  Significantly, plaintiff's appraisal expert rejected the gravel resource as an element of just compensation in his report.  See Dkt. #336 at Ex. E (Grose report) ("The owner has provided information on the fact that the subject site has high quality sand and gravel deposits.  However, as discussed in the highest and best use section, the highest and best use is for rural residential development and not commercial aggregate mining.").  And, contrary to plaintiff's assertion, there is geological data other than the Bore Log that was timely produced in this case.  Compare Dkt. #355 at ¶6 and Ex. C, with Dkt. #346 at 4 (stating plaintiff's contention that the Bore Log "provides the only geologic information regarding the depth of gravel resources on the Ross property.").  Additionally, the Court will allow plaintiff great latitude in cross-examining Mr. Ross and Mr. Barry at trial regarding the basis for their opinions regarding the gravel resource.

The overall purpose of the Rules of Civil Procedure is to "secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Given plaintiff's repeated discovery lapses in this case, coupled with the available evidence for trial concerning the gravel resource, the Court finds that granting defendants' motion furthers this interest of administering a just, speedy, and inexpensive determination of this proceeding.

### III. CONCLUSION

For all the foregoing reasons, the Court GRANTS "Defendants' Motions In Limine Re

---

[10]  Although plaintiff asserts that the five-factor test from Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997) is the "current legal standard" applicable to this case, this legal standard was adopted to determine the situations in which default sanctions may be appropriate.  Id. (citing Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990) (stating "[o]ur own court has fashioned a set of factors for the district court to apply in considering whether a dismissal of default is appropriate as a Rule 37 sanction."); Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang, 105 F.3d 521, 524(9th Cir. 1997) (applying Wanderer's five-factor test to the imposition of a default judgment sanction); Dkt. #346 at 6.  Here, however, the Court is not imposing a default sanction, therefore the Court follows the Ninth Circuit's more recent decisions in Yeti by Molly Ltd. and Wong in imposing the Rule 37(c)(1) exclusionary remedy.

1    Expert Witnesses" (Dkt. #335).

2

3         DATED this 11th day of April, 2008.

4

5                                    _Mrk S Lasnik_

6                                    Robert S. Lasnik
                                     United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANTS' MOTION
IN LIMINE REGARDING EXPERT WITNESSES          -19-